# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 12-mj-90069-KGS |
| JESUS H. DELEON, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This matter comes before the court upon the Government's Motion to Disqualify (ECF No. 14). The government requests that the court disqualify Peter Charles Rombold and Mr. Rombold's law firm from representing defendant Jesus H. Deleon in this criminal proceeding. Mr. Rombold briefly represented co-defendant Cheryl L. Williams,[1] and Mr. Rombold currently represents the interests of both Mr. Deleon and Ms. Williams in a civil matter involving factual issues similar to those presented here. The court held a hearing on the government's motion on September 18, 2012. Based on information presented in the briefs and at the hearing, it appears that no actual conflict of interest exists at this point. Both co-defendants have stated they are not pursuing antagonistic defense theories. Moreover, both co-defendants continue to acknowledge the potential for conflict and the possible remedies. Despite potential conflicts, Mr. Deleon informed the court he wishes to be represented by Mr. Rombold, and Ms. Williams stated she does not object to Mr. Rombold's representation of Mr. Deleon in this matter. Although it is within the court's discretion to disqualify counsel based on the potential for conflict, the government has only outlined ways in which a conflict of interest could occur without showing that a conflict is probable. This showing is not sufficient to outweigh Mr. Deloen's Sixth

---

[1] Mr. Deleon and Ms. Williams were charged separately, but their cases have been consolidated for trial.

Amendment right to counsel of his choosing. For these reasons, the government's motion is denied.

I. **Background**

This criminal action arises out of alleged events that occurred at Fort Riley, Kansas, a federal military installation within the exclusive jurisdiction of the United States. The government alleges that while Mr. Deleon and Ms. Williams were working at Fort Riley's Child and Youth School Services (CYSS), Building 5810, they conspired and carried out the offense of unlawfully disposing of government property without approval. The government contends that Mr. Deleon and Ms. Williams were observed on video footage loading food items from the kitchen onto a trash cart, disguising them as waste, and then either recovering the items for personal use or throwing the food items in a dumpster without obtaining authorization to do so.[2] Mr. Deleon and Ms. Williams are charged with theft in violation of 18 U.S.C.§ 641 and conspiracy in violation of 18 U.S.C. § 371—both Class A misdemeanors.[3] Subsequent to the events alleged in the charging document, CYSS terminated Mr. Deleon's and Ms. Williams' employment. Their union filed grievances on their behalf and retained Mr. Rombold. He will represent both Mr. Deleon's and Ms. Williams' interests in an arbitration proceeding scheduled to take place later this year.

On April 19, 2012, Mr. Rombold entered his appearance on behalf of Mr. Deleon and Ms. Williams in the criminal actions filed against these defendants, respectively. At that time, the court informed Mr. Rombold that his representation of the criminal co-defendants created a conflict of interest and that the court would not accept his appearance on behalf of Ms. Williams.

---

[2] Government's Mot. to Disqualify at 1-2, ECF No. 14.

[3] Am. Information, ECF No. 28.

The court continued Ms. Williams' initial hearing in order to provide time to appoint counsel to represent her. Mr. Rombold explained the nature of the conflict of interest to both Mr. Deleon and Ms. Williams and obtained waivers from the co-defendants later that month.[4] Ms. Williams' waiver was also styled as a motion and order allowing Mr. Rombold to withdraw from her criminal case while continuing to represent Mr. Deleon in his criminal case. It was signed by the special assistant United States attorney prosecuting these actions and approved by the undersigned magistrate judge.[5] The court subsequently appointed counsel to represent Ms. Williams, whose case has been consolidated for trial with Mr. Deleon's case.

Although the prosecutor consented to and signed the waiver and order allowing Mr. Rombold to withdraw from Ms. Williams' case, the prosecutor became concerned about a conflict of interest after the government began negotiations with Ms. Williams.[6] The government offered Ms. Williams leniency in exchange for her testimony regarding Mr. Deleon, but Ms. Williams declined the offer. Throughout this time, Mr. Rombold continued to represent both Mr. Deleon's and Ms. Williams' interests in the civil proceeding. On July 12, 2012, Mr. Rombold informed the court that Mr. Deleon and Ms. Williams were moving forward with civil arbitration against CYSS. At that hearing, the government expressed concern that Mr. Rombold's continued representation of Mr. Deleon and Ms. Williams in the civil proceeding created a conflict of interest. The court requested that the government file a motion explaining these concerns.

---

[4] *See* Consent to Representation and Authorization for Release of Information, ECF No. 20-1; *see also United States v. Cheryl L. Williams*, No. 12-mj-90070-KGS, Mot. and Order for Permissive Withdrawal Waiver and Authorization for Release of Information, ECF No. 6.

[5] *United States v. Cheryl L. Williams*, No. 12-mj-90070-KGS, Mot. and Order for Permissive Withdrawal Waiver and Authorization for Release of Information, ECF No. 6.

[6] Government's Mot. to Disqualify at 3, ECF No. 14.

After the government filed the motion to disqualify and Mr. Deleon filed a response brief, the court held a hearing on the motion. During the hearing, the court detailed for Mr. Deleon and Ms. Williams how numerous conflicts of interest could arise during the course of Mr. Rombold's participation. Both defendants affirmed that they still intended to waive any conflicts of interest and stated that they had no problem with Mr. Rombold continuing to represent Mr. Deleon in the criminal proceeding.

## II. Discussion

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel.[7] The Supreme Court has stated that this right encompasses the right of the accused to "be defended by the counsel he believes to be the best."[8] The Sixth Amendment does not, however, "ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[9] "For example, a criminal defendant does not enjoy an absolute right to be represented by an attorney laboring under a conflict of interest."[10] Even if the criminal defendant waives the conflict, the district court retains the discretion to disqualify conflicted counsel in order to preserve ethical standards and to ensure a fair trial.[11]

In order to determine whether a conflict of interest exists, the court may consider the ethical rules governing attorneys in the court in which they appear.[12] But the court is not limited by the rules of professional conduct. That is, "rules of professional conduct are relevant in the sense that a court's

---

[7] U.S. Const. amend. VI.

[8] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006).

[9] *Wheat v. United States*, 486 U.S. 153, 159 (1988).

[10] *United States v. Evanson*, 584 F.3d 904, 909 (10th Cir. 2009) (citing *Wheat*, 486 U.S. at 162-63 (1988).

[11] *Id.* (citing *Wheat*, 486 U.S. at 160, 163).

[12] *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005).

authority to disqualify counsel stems in part from its interest in 'ensuring that criminal trials are conducted within the ethical standards of the profession.'"[13] The court need not necessarily identify a strict violation of a rule of professional conduct before disqualifying counsel.[14]

The District of Kansas has adopted the Kansas Rules of Professional Conduct except as otherwise provided by specific rule of this court.[15] Kansas Rule of Professional Conduct 1.7 addresses conflicts of interest. The rule states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client;
> (2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Kansas Rule of Professional Conduct 1.0 defines terms appearing in the rules. Section (f) states, "'Informed consent' denotes an agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." While the court is not required to accept a waiver of a conflict of interest, a waiver is an acceptable means of

---

[13] *Evanson*, 584 F.3d at 910 (quoting *Wheat*, 486 U.S. at 160).

[14] *Id.*

[15] D. Kan. Rule 83.6.1(a).

5

dealing with a conflict.[16] Generally, the trial court must participate in the waiver decision by ensuring that the defendants fully understand the nature of the situation and have knowingly decided to proceed.[17] If the defendants have knowingly and voluntarily waived the potential conflicts of interest and if the conflicted attorney believes he can comply with his ethical obligations, including the obligation that representation will not be adversely affected, "then the waiver is effective to address the conflict situation as it exists at the time, both from the Sixth Amendment and professional ethics standpoints."[18]

Here, Mr. Rombold has complied with Rule 1.7, and both defendants have given informed consent for Mr. Rombold to proceed with representing Mr. Deleon. In April, Mr. Rombold obtained waivers from both Mr. Deleon and Ms. Williams after contacting the Kansas Office of the Disciplinary Administrator to make sure he was complying with his ethical obligations. And at the hearing in September, the court again cautioned these defendants about the potential conflicts that could arise as a result of Mr. Rombold's participation in this case. Again, both defendants stated they understood the potential conflicts. The court also informed both defendants about the reasonably available alternatives to Mr. Rombold's representation. Mr. Deleon stated he wished for Mr. Rombold to continue to represent him, and Ms. Williams stated that she had no objection to this.

Despite the waivers and Mr. Rombold's compliance with Rule 1.7, the government argues that the court should still disqualify Mr. Rombold because of the potential conflicts of interest that could arise. The government argues Mr. Rombold has access to information he

---

[16] *United States v. Trujillo*, 302 F. Supp. 2d 1239, 1249 (D. Kan. 2004).

[17] *Id.* at 1249-50 (citing *United States v. Migliaccio*, 34 F.3d 1517, 1527 (10th Cir. 1994).

[18] *Id.* at 1251.

would not otherwise be entitled to obtain; he has the potential to exert influence over Ms. Williams, although she is separately represented in this criminal matter; and there is the appearance of impropriety if Mr. Rombold is allowed to continue.

As for Mr. Rombold's access to information, the government contends that Mr. Rombold's representation of Ms. Williams' interests in the civil matter means that he is privy to information that an attorney in a criminal case would normally not be able to obtain regarding a co-defendant. For example, Mr. Rombold almost certainly knows Ms. Williams' version of events and has access to information about her case through his involvement with the civil proceedings. Counsel for Ms. Williams also acknowledged that Mr. Rombold had access to information that he could use against Ms. Williams at trial—although Ms. Williams' attorney did not anticipate this would occur. But regardless of whether the court disqualifies Mr. Rombold, his involvement with both of these defendants in the civil proceeding will continue. While Ms. Williams' lawyer may counsel her against sharing information with Mr. Deleon or Mr. Rombold, it is certainly within Ms. Williams' discretion to do so, and it appears she has elected to do just that. Disqualifying Mr. Rombold would not appear to put an end to this exchange of information that the government cites as problematic, nor would it end Mr. Rombold's potential for influence because he would still advise these defendants by virtue of his role in the civil proceeding.

The government also focuses in large part on Ms. Williams' refusal to enter into a plea agreement as evidence that Mr. Rombold had either actually or inadvertently influenced this decision. If one of the defendants were to express an interest in a plea agreement that required that defendant to testify against the other, an actual conflict would exist. But the court must evaluate the issue of conflict as it exists at this time.[19] And at this time, there is no evidence to

---

[19] *Id.* at 1253.

believe Mr. Rombold influenced Ms. Williams' decision to reject the government's offer of a plea agreement. During the hearing, Mr. Rombold said that Ms. Williams informed him of the government's offer. He said he encouraged her to speak with her criminal defense attorney, which Ms. Williams said she did. The fact that Ms. Williams did not accept a plea agreement that the government believes would be in her best interest does not mean that she was actually or inadvertently influenced by Mr. Rombold. Indeed, counsel for Ms. Williams stated during the hearing that there was no current conflict in her view.

The timing of the government's motion to disqualify also causes concern. For one, at the April hearing, the undersigned magistrate judge specifically informed counsel that Mr. Rombold's representation of Mr. Deleon in this matter and continued involvement in the parallel civil proceeding could create additional conflicts of interest not remedied by Mr. Rombold's withdrawal from Ms. Williams' criminal case. Despite what should have been obvious in April, the government consented to Mr. Rombold withdrawing from Ms. Williams case and continuing representation of Mr. Deleon. It was not until August when the government filed a motion seeking disqualification—after Ms. Williams had demonstrated an unwillingness to accept the government's offer of a plea agreement. In fact, during the hearing on the motion to disqualify, the government stated that criminal prosecution on the conspiracy charge very likely depends on the testimony of one of the defendants.

As for the government's argument that Mr. Rombold's participation in this case creates an appearance of impropriety, the theoretical or speculative possibility of conflict is not sufficient to disqualify counsel.[20] Quite simply, there is no *per se* rule that the court must

---

[20] *Id.* ("The court should not speculate on every theoretical development that could possibly occur in the case until it finds a scenario leading to a conflict and then use such speculation as a basis to deny defendant the counsel he has chosen.").

8

disqualify a criminal attorney who also represents his client and a co-defendant in a parallel civil proceeding. This is true even in situations where the potential for conflict is arguably greater—for example, when one attorney seeks to represent co-defendants in a criminal proceeding.[21]

In this case, both defendants have waived potential conflicts of interest after being advised by both Mr. Rombold and the court of the risks and available alternatives to proceeding in this manner. While the government has outlined theoretical ways in which it is possible that a conflict could occur that would hamper each defendant's representation, the government has not made showing that a conflict is probable at this point. Both Mr. Rombold on behalf of Mr. Deleon and counsel for Ms. Williams have stated they are not pursuing antagonistic defense theories. The court believes the waivers are effective. At this juncture, there is not a sufficient showing of an actual or possible conflict that would override Mr. Deleon's Sixth Amendment right to be represented by counsel of his choice.

Accordingly,

**IT IS THEREFORE ORDERED** that the Government's Motion to Disqualify (ECF No. 14) is denied.

**IT IS SO ORDERED.**

Dated this 27th day of September, 2012, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge

---

[21] *See Wheat*, 486 U.S. at 159-60 (stating that the multiple representation of criminal defendants, while suspect, is not a *per se* violation of constitutional guarantees of effective assistance of counsel) (citing *Holloway v. Ark.*, 435 U.S. 475, 482 (1978)); *see also* Fed. R. Crim. P. 44(c) (addressing joint representation of criminal defendants).